# CHARLESTON.

JOHN S. FARR v. J. S. WEAVER *et al.*

Submitted May 6, 1919.   Decided May 13, 1919.

1. PAYMENT—*Application—Exception to Rule.*

While as between a debtor owing several debts to the same party and his creditor, the former paying a sum of money has a right to designate to which of said debts the same shall be applied, or upon his failing to do so the creditor may make such application as he sees fit; yet there is an exception to this rule where the money was received by the debtor from a third party whose property is subject to a lien in favor of such creditor, which it was the purpose of such third party to have discharged by the payment of such money, and such creditor has knowledge of the source of such fund and the purpose for which it was turned over to the debtor.   (p 185).

2. MECHANICS' LIENS—*Materialmen—Application of Owner's Obligation—Lien.*

Where a materialman furnishes to a contractor material and supplies for the construction and erection of a building, and receives from said contractor, with full knowledge that the same

was turned over to said contractor for the purpose of paying for the supplies which went into such building, money or other obligation of the owner of said building, such materialman must apply the same upon the account for material going into such building. He cannot make application of such funds, even at the direction of the contractor, to an older or other debt of the contractor, and retain a lien upon the building of the party furnishing such fund for the material furnished therefor by him.   (p. 187).

3.  SAME.

Where the owner of real estate contracts with another for the construction and erection of a building thereon, but fails to take from him a solvent bond, as provided by section 14 of chapter 75. of the Code, as between such owner and a materialman furnishing material for the construction and erection of such building to such contractor, the contractor becomes the agent of the owner, and a materialman receiving from such contractor money or other property, with knowledge that the same was turned over to him by the owner of the property for the purpose of paying for the material which had been used in its construction, must apply such money or other property to that purpose.   (p. 187).

Suit by John S. Farr against J. S. Weaver and others to force a mechanic's lien. Objections to answer overruled, and objection to filing of replication sustained and cause certified.

*Affirmed and remanded.*

*Marcum & Shepherd,* for plaintiff.

*J. H. Strickling,* for defendants.

RITZ, JUDGE:

The questions to be determined upon the certificate in this case are the sufficiency of an answer filed in a suit to enforce a mechanic's lien, and the sufficiency of a special replication tendered to said answer.

The plaintiff John S. Farr is engaged in the business of selling building materials.   The defendant J. S. Weaver was the owner of two lots in the City of Huntington.   In the summer of 1917 the defendant Weaver entered into a contract with Watts-Castle Construction Company for the construction and erection of a house on each of his said lots. For the purpose of complying with this contract the Watts-

Castle Construction Company purchased building material from said Farr amounting to approximately twelve hundred dollars, which went into the said houses in practically equal proportions. Upon the completion of the buildings Farr filed his notice in the county clerk's office to perfect his liens as materialman under the provisions of ch. 75 of the Code, and subsequently brought a suit against each of said properties for the purpose of subjecting the same to sale in satisfaction of said liens. The defendant Weaver filed an answer in the one case certified here, which it is said will be conclusive of the other case, in which he admits that Farr furnished the material as set up in the bill; that the same was used in the construction and erection of the houses on his lots as stated in said bill; that Farr gave notice as required by law for the purpose of perfecting said liens, but he avers in his answer that the amount due Farr has been entirely paid, wherefore no recovery should be allowed.

The facts, as alleged in his answer, upon which he bases this conclusion are that on the 12th of September, 1917, while the work was in progress on these houses, he executed to the Watts-Castle Construction Company his note for twelve hundred dollars to pay for material that had been furnished; that the Watts-Castle Construction Company took this note to Farr, and endorsed the same to him, and that instead of crediting it on the account which Farr had for material furnished for Weaver's houses, he credited it on an older account which the Watts-Castle Construction Company owed him. The original answer did not aver that Farr knew that this note was given to pay for material which went into Weaver's houses, and upon an exception being filed to it by Farr the same was sustained. An amended answer was thereupon filed by leave of the court which averred that at the time Farr took this note he knew it had been given by Weaver to pay for material which had been furnished for his houses, and that it was his duty with that knowledge to apply the same to discharge the account which he had for this material. This answer further charged that the Watts-Castle Construction Company was at said time insolvent, and that Farr knew this fact, or that he knew that it was in an em-

barrassed financial condition, but that Weaver had no knowledge of this kind. Exceptions were filed to this answer upon the ground that the fact of the payment being made by Weaver as aforesaid, and received by Farr under the conditions aforesaid, made no defense in the mechanic's lien suit. The court overruled these exceptions, however, and sustained the answer. The plaintiff Farr then tendered a special replication in which he averred that the twelve hundred dollar note given by Weaver to the Watts-Castle Company was not applied by him to any former indebtedness of the Watts-Castle Construction Company, but was applied by that company itself to a note upon which he, Farr, was an endorser; that the bank which held this note had been insisting to the Watts-Castle Construction Company, as well as to Farr, the endorser, that it be paid, and that upon Farr's insistence the Watts-Castle Construction Company procured this twelve hundred dollar note from Weaver together with an eight hundred dollar note from another party, and turned them over to Farr with direction to apply them to the note which had theretofore been given to Farr and discounted by him at the bank. The court sustained an objection to the filing of this replication, holding that the facts therein stated would not excuse Farr from applying the twelve hundrd dollar note to the account he had for material which went into the Weaver houses, and it is the action of the court in overruling the exceptions taken to the answer and sustaining the objection to this replication which is complained of by Farr.

He contends that the question involves the doctrine of the application of payments between creditor and debtor, and that inasmuch as his debtor, the Watts-Castle Construction Company, directed the application of this note in a particular way, Weaver cannot complain that it was so applied. There is no doubt that between debtor and creditor the rule is that the debtor, when he makes a payment, has the right to say upon what particular debt the same shall be credited, and in case he fails to make any particular application of it, the creditor may make such application, and in case neither of them make such application the same will be made by the

court, giving due weight to all the equities between the par-
ties. *Wait* v. *Building Association*, 81 W. Va. 702. There
is involved here more than the simple relation of debtor and
creditor. At the time Farr furnished this material to the
Watts-Castle Construction Company to be used in Weaver's
houses, under the law of this state, by the simple act of de-
livering material to the houses to be used therein, he acquired
a lien upon the property of Weaver. It is true that he must
give certain notices and file and record the same within a
certain time in order to retain this lien, but the law brings
it into existence at the time the material is furnished. He
knew this fact and knew at the time he took this twelve hun-
dred dollars, according to the allegation of the answer, that
Weaver had turned it over to the Watts-Castle Construction
Company for the very purpose of paying for the material
that went into his houses. Weaver, of course, knew at that
time that whoever furnished this material had a lien on his
property for the price thereof, and his payment and delivery
of the money to the Watts-Castle Construction Company was
for the very purpose of discharging this lien. Can it be said
that Farr holding this lien can receive the money of the
owner, which he knows at the time he receives it is paid for
the particular purpose of discharging the lien, and even at
the direction of the contractor apply it to some other debt
due him by the contractor, and preserve his lien against the
premises? We think not. The application of this money by
the Watts-Castle Construction Company for any other pur-
pose than payment for the materials which had gone into
the houses was the perpetration of a fraud by it upon Weaver,
and Farr knew this at the time he accepted the money, ac-
fording to the allegation of the answer. The original answer
filed did not aver such knowledge on the part of Farr, and
for that reason exceptions to it were sustained. This action
of the court we think was entirely right, although there are
some authorities which hold that even though the material-
men does not know from what source the money comes he
must find out and apply it to the discharge of the indebted-
ness which would relieve the owner of the money from any
liens he might thereafter have as materialman. *Sious City*

*Foundry & Mfg. Co.* v. *Merten* (Ia.) 156 N. W 367, L. R. A.
1916 D, 1247; *Williams* v. *Willingham-Tift Lumber Co.,* 5
Ga. App. 533. It does not occur to us, however, that these
decisions are sound. There is no duty upon the part of the
materialman in a case like this to set on foot an inquiry as
to the source from which a contractor derives funds that he
pays over to him. His duty to apply them on a particular.
account arises when he has notice that they have been paid to
the contractor by the owner of the building into which the
materials went for the purpose of discharging the owner's
indebtedness therefor. This view seems to be supported by
the weight of authority. *Lee* v. *Storz Brewing Co.,* (Neb.)
106 N. W. 220; *Crane Bros. Mfg. Co.* v. *Keck,* (Neb.) 53 N.
W. 606; *Boyer-Van Kuran Lumber & Coal Co.* v. *Colonial
Apartment House Co.,* 94 Neb. 180; *Peterson* v. *Shain,* (Cal.)
33 Pac. 1086; *Flexner University School* v. *Strassel Gans
Paint Co.,* (Ky.) 112 S. W. 686; *Clow & Sons* v. *Goldstein,*
147 Ill. App. 571; *Mills* v. *Olsen,* 43 Mont. 129; and see
monographic note on this subject in L. R. A., 1916 D, page
1254 etc. There are some authorities which apparently take
the contrary view. Most of them are distinguishable upon
the facts. We have carefully examined all of the cases to
which we have access, and we find that in most instances
where either the debtor or creditor was allowed to make ap-
plication of such payments to another debt than the one
against the property the owner of which furnished the money,
some of the elements above indicated were lacking, or at
least it does not appear from the opinions in most of these
cases that the materialman or sub-contractor receiving the
money had notice of the source from which it came, and the
purpose for which it was paid to the contractor. There are
one or two cases cited where it appears that the materialman
did have such notice, and which hold, notwithstanding this,
that he might make such application of the fund as was di-
rected by the contractor, even to the prejudice of the owner
of the building who furnished the money. We do not think
these cases are sound.

There is another very strong reason in this case which con-
vinces that Weaver has the superior equity, and that is the

averment that the contractor was at the time insolvent, which fact was known to Farr but unknown to Weaver. Taking this averment as true it is equivalent to saying that at the time Farr took this money he knew that he would have to enforce his lien against Weaver's houses to collect his debt, because of the insolvency of the contractor; that he knew that Weaver had turned over this note to the contractor for the very purpose of relieving his property of that lien, and notwithstanding this state of facts Farr, at the contractor's direction, applied it to a purpose to which it was never intended to be applied by the owner of the fund.

It may be said further that our mechanic's lien statute is conclusive of this case against the plaintiff. While there is no positive averment that Weaver did not take a bond from his contractor and record the same, this appears from the pleadings by necessary implication, and our statute provides that where the owner does not take a solvent bond from his contractor, and have the same recorded, as between such owner and any sub-contractor or materialman furnishing materials for the construction of the building, the contractor will be treated as the agent of the owner. Section 14, ch. 75 of the Code. The effect of this statute in a case like this is to compel the owner to pay for all materials furnished for his buildings, no matter how much the amount thereof may exceed the contract price unless he takes from the contractor a bond sufficient to indemnify anyone furnishing such materials. As before stated, the pleadings do not positively aver that no such bond was taken, but the conclusion is irresistible from the allegations made that such is the case. Then so far as Farr and Weaver are concerned the Watts-Castle Construction Company was Weaver's agent, and any materials which that company purchased from Farr for Weaver's houses it purchased for Weaver, and the full value of Weaver's property was pledged for the payment thereof. It also necessarily follows that that other doctrine of agency which forbids an agent from making a misapplication of his principal's funds must also apply. It is quite well settled that one dealing with an agent may not allow such agent to pay his own debt with the funds of his principal. This doc-

trine is so familiar that it scarcely needs the citation of authority to support it. 21 R. C. L. p. 913; Mechem on Agency, § 2090 etc.; *Gerard* v. *McCormick*, (N. Y.) 14 L. R. A. 234 and note.   So that it may be said when the Watts-Castle Construction Company turned this note over to Farr, it was acting as the agent of Weaver, and Farr knowing that this was Weaver's money had no right to accept it from Weaver's agent in payment of the agent's personal obligation to him, or in discharge of the agent's obligation upon which he was endorser.

There is no averment in either the answer or the amended answer filed in this case that Weaver has not sufficient funds remaining in his hands from the contract price of the buildings erected by the Watts-Castle Construction Company for him, to pay off this mechanic's lien.   Of course, if it should appear that there are in his hands unapplied sufficient funds for the purpose, he cannot complain.   The answer is not excepted to upon this ground, and the allegations contained in it lead to the conclusion that Weaver has fully paid the contract price for the houses.   However, in this case it should be positively averred in either the answer or the amended answer filed, in order that the pleadings may fully present all matters necessary for a determination of the questions involved.   We are of the opinion that the action of the court in sustaining the exceptions to the original answer was correct, and that his action in overruling the exceptions to the amended answer, and in refusing to allow the special replication to be filed because it presented no defense to the matter set up in the amended answer, was likewise correct.

We therefore affirm the rulings of the lower court and remand the cause to be further proceeded with.

*Affirmed and remanded.*