COOPER *v.* SPARROW.

5-146 259 S. W. 2d 496

Opinion delivered June 29, 1953.

*Digby & Tanner*, for appellant.

*Mary Margot Biddulph, Virgil R. Moncrief* and *John W. Moncrief*, for appellee.

ROBINSON, Justice. Appellant, J. G. Cooper, doing business as Cooper Lumber Company, filed this suit against appellee Chester Sparrow and others, contending that Sparrow as the prime contractor in the construction of certain dwellings is indebted to Cooper in the sum of $150 for cash advanced by Cooper to one H. W. Kennedy, a painting subcontractor, and used by Kennedy in meeting payrolls; and also prayed for judgment against Sparrow in the sum of $894.68 for materials furnished by Cooper and used on the job. The other defendants in the case are the owners of the property on which Cooper seeks to establish a materialman's lien. There was a decree in favor of Sparrow and the property owners. Cooper has appealed.

The subcontractor Kennedy made arrangements with Cooper to furnish materials for the paint job, and Cooper

also agreed to advance Kennedy money to meet his payroll. The contract between Sparrow and Kennedy was prepared at Cooper's office; however, Cooper is not a party to the contract; but the contract provides that all payments made by Sparrow on the contract with Kennedy be made to H. W. Kennedy and Cooper Lumber Company. A preponderance of the evidence shows that Sparrow did not know and had no reason to believe that Cooper had agreed to advance payroll money to Kennedy. After the job had been in progress for some time, Sparrow made a check to Kennedy and Cooper jointly in the sum of $800 at which time Kennedy owed Cooper $507.80 for materials and also owed for cash advanced to meet the payroll; but Sparrow did not know of the advances for payroll purposes. Later Sparrow learned of such advances and in order to protect himself made no further checks to Kennedy and Cooper, but saw to it that the employees of Kennedy who were working on the job were paid, and also withheld an amount he thought sufficient to pay for the materials. Sparrow contends the entire $800 paid to Kennedy and Cooper jointly should be credited on the materials account; but only $506.80 was owed on that account at the time of the $800 payment. When Cooper cashed the $800 check he could not credit to the materials account more than was owed on that account. As a matter of fact, Cooper credited the entire $800 to the account for cash advanced for payroll purposes. He claims that he had a right to credit the amount paid in such manner and that Sparrow as the prime contractor still owes the entire materials account and $150 balance on the cash account, and that he, Cooper, should have a lien on the property to secure the payment of both accounts.

Cooper contends that the principle of promissory estoppel applies and relies on *Peoples National Bank of Little Rock* v. *Linebarger Construction Co.*, 219 Ark. 11, 240 S. W. 2d 12. However, the facts in that case were altogether different from those in the case at bar. There Linebarger was the principal contractor and it was shown that the bank advanced money to a plastering con-

tractor to meet his payroll on reports from Linebarger to the bank as to the amount of money the plastering contractor had earned on his contract for that particular payroll period. Linebarger knew the bank was advancing the money to meet the payroll on the strength of his reports. But here a preponderance of the evidence shows that Sparrow did not know Cooper was to advance money for payroll purposes, and in fact had no reason to suspect that Cooper contemplated making such advancements to Kennedy at the time Kennedy and Sparrow entered into the contract. It is true that Sparrow had every reason to believe that Cooper was going to furnish the materials to Kennedy, but Cooper was in the materials business and not in the banking business, and Sparrow had no reason to believe that Cooper was going to furnish money. While Cooper was entitled to a lien on the property for the materials furnished, he was not entitled to a lien for cash advanced. *Long-Bell Lumber Co.* v. *Auxer*, 221 Ark. 672, 255 S. W. 2d 163. *Bank of Commerce* v. *Lawrence County Bank*, 80 Ark. 197, 96 S. W. 749.

As between debtor and creditor, where the debtor fails to designate the debt and there are several debts to which the payment can be applied, the creditor may apply it as he chooses. *Hawkins* v. *Hawkins*, 200 Ark. 38, 137 S. W. 2d 904. However, there is an exception to this rule and that is where the materialman knows the source of the money is a third party whose property would be subject to materialman's lien. *Long-Bell Lumber Co.* v. *Auxer*, supra.

Cooper knew the $800 check came from Sparrow; in fact Cooper was one of the payees named on the check. In these circumstances it was Cooper's duty to apply the payment to the account for which Sparrow was liable and for which the property was subject to a lien. *Long-Bell Lumber Co.* v. *Auxer*, supra; *Farr* v. *Weaver*, 84 W. Va. 182, 99 S. E. 395; *Webb* v. *Crane Co.*, 52 Ariz. 299, 80 Pac. 2d 698. If the law were otherwise a materialman might knowingly use the money of one person to discharge the debt of another, and at the same time leave the property owner in such position that he could

be compelled to pay again. See, also, annotation in L. R. A. 1916D, 1259.

At the time Sparrow wrote the check to Kennedy and Cooper in the sum of $800, Cooper had furnished materials amounting to $507.80 and Cooper should at that time have applied a sufficient sum to the materials account to pay it in full. Sparrow deposited in court $289.24 owed to Kennedy which can also be applied to the payment of the Cooper materials account of $894.68. This leaves $97.64 owed to Cooper for which he is entitled to a lien.

Reversed with directions to enter a decree not inconsistent herewith.

ED. F. McFADDIN, Justice (dissenting). I respectfully dissent from that portion of the majority opinion which refuses Cooper a judgment for $1,044.68 against Chester Sparrow; and here are the matters impelling my dissent:

On February 2, 1952, Sparrow, the prime contractor, let a subcontract to Kennedy to paint twelve houses. Kennedy and Sparrow signed the following instrument:

"I, H. W. Kennedy, Paint Contractor, propose to paint the inside and outside of twelve (12) houses for C. M. Sparrow, General Contractor, located at Stuttgart, Arkansas. Said houses are four and five room houses.

"On four room houses all material, labor, brushes and other equipment will be furnished by H. W. Kennedy for $375.00 per house. On five room houses all paint, labor, brushes and equipment will be furnished by H. W. Kennedy for $480.00 per house.

"I, C. M. Sparrow, General Contractor, agree to pay $375.00 per four room house where paint work on each house is completed, and to pay $480.00 per five room house after satisfactory final F. H. A. Inspection.

"*All payments will be made jointly to H. W. Kennedy, Paint Contractor, and to Cooper Lumber Company.*

"All work will be performed in a workmanship like manner and in accordance with accepted procedure." (Italics our own.)

Attention is called to the fact that the foregoing contract specifically recited: "*All payments will be made jointly to H. W. Kennedy, Paint Contractor, and to Cooper Lumber Company.*" That contract was made for the benefit of Cooper, and therefore it was actionable by Cooper. In *H. B. Deal & Co.* v. *Head*, 221 Ark. 47, 251 S. W. 2d 1017, we discussed the matter of third party beneficiaries in contracts; and after citing many of our own cases, we approved this statement of the rule from 12 Am. Jur. 825:

"Stated in general terms and leaving out of consideration the limitations recognized in various jurisdictions, the rule in a great majority of American jurisdictions is that a third person may enforce a promise made for his benefit, even though he is a stranger both to the contract and the consideration."

In the case at bar, Cooper had sued Sparrow on the foregoing contract which shows on its face that it was made for his benefit; and the quoted rule impels me to the conclusion that Cooper is entitled to recover.

The majority opinion recites that Sparrow did not know that Cooper was furnishing payroll money to Kennedy. What difference would such ignorance on the part of Sparrow have to do with the matter, when by his own contract he had agreed that *all* checks would be made payable to both Kennedy and to Cooper? Sparrow knew he had signed this contract, and he knew he breached it when he failed to make checks payable to both Kennedy and Cooper. The contract in itself puts Sparrow on notice of the rights of Cooper: and such notice if pursued by Sparrow, by any inquiry, would have disclosed that Cooper was relying on Sparrow's signed agreement every time Cooper advanced any payroll money to Kennedy. Our cases hold that, the notice of facts and circumstances which put a man of ordinary intelligence and prudence on inquiry is, in the eyes of

the law, equivalent to knowledge of all the facts a reasonably diligent inquiry would disclose. *Bland* v. *Fleeman,* 58 Ark. 84, 23 S. W. 4; *Waller* v. *Dansby,* 145 Ark. 306, 224 S. W. 615; *Jordan* v. *Bank,* 168 Ark. 117, 269 S. W. 53; *Shoptaw* v. *Sewell,* 185 Ark. 812, 49 S. W. 2d 601.

At first Sparrow honored his signed agreement by issuing a check for $800.00 to both Kennedy and Cooper as payees. Thereafter Sparrow breached his contract by issuing checks to Kennedy without including Cooper as payee. But Cooper relied on the signed agreement that Sparrow had made, and advanced payroll money and supplies to Kennedy in the total sum of $1,844.65. Deduct from this total the one check of $800.00 in which Cooper was named as payee; and there is left a balance of $1,044.68 that Cooper is entitled to recover from Sparrow by virtue of the contract.

Since the majority is not compelling Sparrow to live up to his signed contract, I respectfully dissent.