A90A0261. ELECTRICAL DISTRIBUTORS, INC. v. TURNER CONSTRUCTION COMPANY et al.

(395 SE2d 879)

McMURRAY, Presiding Judge.

Electrical Distributors, Inc. ("EDI") appeals from the denial of its motion for summary judgment and the grant of summary judgment in favor of appellees Turner Construction Company ("Turner") and Federal Insurance Company ("Federal") in a suit to enforce its lien rights against a construction project for materials furnished but not paid for. The owner of the property contracted with Trans-Con Construction Company ("Trans-Con") to construct a building to be known as the Buckhead Plaza. Trans-Con subcontracted the electrical portion of the project to Electrical Management, Inc. ("EMI"), which then contracted with EDI to supply electrical and lighting materials. On May 19, 1987, EDI filed a claim of lien against EMI for materials delivered but not paid for. At that time there remained $3,158,903 to be paid to the general contractor under the contract price. On June 3, 1987, EMI filed a petition in bankruptcy, thus allowing an action to be brought directly against the owner under OCGA § 44-14-361.1 (a) (4). Turner, having merged with Trans-Con, assumed all of the obligations of Trans-Con under its contract with the owner and on October 7, 1987, Turner, as principal, and Federal, as surety, filed a bond to discharge EDI's lien.

EDI initiated the instant action on January 2, 1988, to foreclose on its lien. The owner was subsequently dismissed as a party pursuant to OCGA § 44-14-364, which provides that the sole remedy in such actions is against the bond filed by the owner. EDI alleged that the unpaid invoices totalled $117,538.58 with interest accruing according to the terms of the contract with EMI, and moved for summary judgment. In a cross-motion for summary judgment, appellees raised three defenses, including the "contract price" defense found in OCGA § 44-14-361.1 (a) (4) and (e), the obtaining of lien waivers, and EDI's intermingling of its accounts. After submission of briefs and oral arguments, the trial court denied EDI's motion, ruled unfavorably to appellees on their first two defenses, but granted summary judgment on the ground that by failing to maintain separate accounts for each construction project for which it had supplied materials to EMI, EDI had waived its lien rights. See *Artistic Ornamental Iron Co. v. Long*, 113 Ga. App. 464 (148 SE2d 478) (1966). EDI's motion for reconsideration of this judgment was denied and it appeals from both orders. *Held*:

1. EDI admits that it assigned one "customer number to EMI . . . for all jobs done by EMI in Georgia . . .," but argues that it "maintain[ed] the separateness of its billings for each project . . ." by treating "each individual invoice [as] a separate 'account' in which EMI became indebted through the purchase of materials." More specifically, EDI argues that it maintained segregated billings by issuing one invoice for each EMI order, by describing the project of delivery on each invoice, by requiring EMI to designate payments to specific invoices and by issuing monthly statements showing which EMI invoices remained unpaid.

In *Rickman Bros. Lumber &c. Co. v. Martin*, 144 Ga. App. 39 (240 SE2d 308), it was recognized "that the law requires the claimant to preserve the unity of his claim against particular property, and if he does not 'but so mingles it with other claims as to necessitate a process of separation by the courts, it may well be held that he has waived his lien.' " Id. at 40. However, the plaintiff in *Rickman Brothers* avoided lien waiver because it "did keep track, by invoice numbers in its general ledger, of the type and cost of materials furnished to each job so that it could assemble this information at any time." Id. at 41. Likewise, in *Maloy v. Planter's Warehouse &c. Co.*, 142 Ga. App. 69, 70 (1) (234 SE2d 807), this Court found no waiver where the purchase tickets specified the individual job and reflected whether or not there had been any payments made. Id. at 72.

In the case sub judice, EDI introduced copies of unpaid invoices for electrical materials and lighting supplies furnished to EMI for the Buckhead Plaza project. These invoices support EDI's $117,538.58 claim. Further, EDI's accountant explained that when a payment check was received from EMI the amount paid was entered against the invoice number designated on the check stub and that, if no invoice number was so designated, then EMI was contacted for direction as to application of the amount paid. The accountant also explained that invoices were removed from EMI's account as they were paid and that at the end of each month a statement was prepared showing the job number, name and balance owed. This evidence supports a finding that EDI did not waive its lien rights because of intermingling. See *Maloy v. Planter's Warehouse &c. Co.*, 142 Ga. App. 69, 70 (1), 71 (ii), supra. Each invoice was in effect a separate account, satisfied according to the direction of EMI. It therefore follows that EDI established a prima facie right to summary judgment. Nonetheless, appellees generally dispute the accuracy of EDI's claim. However, they offer no sworn testimony to contradict the evidence submitted by EDI.[1]

---

[1] In effect, appellees' defense is premised on the basis of *insufficient* evidence, rather

"Generalized arguments amounting to mere conclusions have no probative value to pierce the facts presented by the movant for summary judgment. [Cit.]" *Jay Gleason Advertising Svc. v. Gleason*, 193 Ga. App. 445 (2) (388 SE2d 43) (1989). "[W]here a plaintiff files . . . a motion for summary judgment, and evidence is offered on the issue, if the plaintiff establishes a prima facie right to summary judgment, a defendant may not rest upon conclusory allegations or defenses in his pleadings, but must come forward with facts showing a genuine issue remains for trial.' [Cit.]" *Thomasson v. Pineco*, 173 Ga. App. 794, 796 (328 SE2d 410) (1985). Accord *International Furniture Distributors v. Lifshultz Fast Freight*, 176 Ga. App. 102 (335 SE2d 628) (1985). "In order to counter a properly supported motion for summary judgment, the opposing party 'must set forth specific facts showing that there is a genuine issue for trial.' OCGA § 9-11-56 (e)." *Doug Howle's Paces Ferry Dodge v. Chrysler Credit Corp.*, 191 Ga. App. 556, 560 (382 SE2d 364) (1989). Here, the appellees failed to satisfy this burden.

2. Appellees argue in their brief that the trial court improperly denied their motion for summary judgment on their contract price defense, and contend that even though no cross-appeal was taken from that determination they are entitled to raise the issue on this appeal as any other judgments, rulings or orders rendered in the case which may affect the proceedings below may properly be reviewed by the appellate court. See *Southeast Ceramics v. Klem*, 246 Ga. 294 (1) (271 SE2d 199) (1980); *Georgia Society of Plastic Surgeons v. Anderson*, 257 Ga. 710 (363 SE2d 140) (1987). As explained in *Georgia Society of Plastic Surgeons v. Anderson*, supra, "[t]he general rule is that an appellee must file a cross-appeal to preserve enumerations of error concerning adverse rulings. [Cit.] However, a ruling that becomes material to an enumeration of error urged by an appellant may be considered by the appellate court without the necessity of a cross-appeal. [Cits.]" Id. at 711. In the case sub judice, the validity of the contract price defense raised by appellees is material to a determination of whether the grant of summary judgment was correct, although for the wrong reason, and thus will be considered. See *Reese Realty Co. v. Pal Realty*, 182 Ga. App. 215, 216 (2) (355 SE2d 125) (1987).

As principal and surety on the bond posted to discharge EDI's lien claim, appellees were entitled to assert any defenses which would otherwise belong to the owner, such as the contract price defense found in OCGA § 44-14-361.1 (a) (4). This subsection provides in part "that in such action for recovery, the owner of the real estate im-

---

than *disputed* evidence. Indeed, other than one invoice for the Buckhead Plaza project which was inadvertently charged to a wrong customer number, they have made no showing that any of the documents submitted by EDI were not valid proof of its claim.

proved, who has paid the agreed price or any part of same, may set up the payment in any action brought and prove by competent and relevant evidence that the payments were applied as provided by law, and no judgment shall be rendered against the property improved." OCGA § 44-14-361.1 (e) further specifies that "[i]n no event shall the aggregate amount of liens set up by Code Section 44-14-361 exceed the contract price of the improvements made or services performed." The focus of this defense is the amount the owner of the property has spent under the contract at the time the lien was filed, for the claimant is entitled to recover only the balance of the contract price remaining to be paid at the time the lien was filed; once a lien is filed, payments to others are made at the peril of the owner. See *Green v. Farrar Lumber Co.*, 119 Ga. 30 (46 SE 62) (1903).

Citing *Adams v. W. P. Stephens Lumber Co.*, 158 Ga. App. 761 (282 SE2d 217) (1981) and *Young v. Harley-Mitchell Hardware Co.*, 173 Ga. 35 (159 SE 567) (1931), as authority, appellees argued that because either Trans-Con, as general contractor, or Turner, as its successor, were paid the full amount owed under the contract by the owner, but expended an amount beyond the contract price, any payment to EDI on its lien was precluded. The trial court found this defense to be inapplicable as it was premised upon the amount spent by the general contractor, rather than the owner. The trial court distinguished *Adams* and *Young* because in those cases the general contractor had defaulted on the contract, thereby breaching the contract between itself and the owner and forcing the owner to expend more funds to hire another contractor to complete the project. Unlike *Adams* and *Young*, in the case sub judice, the general contractor completed the construction, and while the subcontractor EMI did abandon the project, this abandonment did not affect the contract price between the owner and the general contractor.

We find the issue of the validity of appellees' contract price defense to be controlled by the recent decision of this Court in *Mayer Elec. Supply Co. v. Federal Ins. Co.*, 195 Ga. App. 191 (393 SE2d 270) (1990), which involved a suit brought against the same appellees to foreclose another materialman's lien. There we held that "an owner's mere payment of the full contract price to the contractor, standing alone, is not and has never been a complete defense to foreclosure of a materialman's lien." Id. at 192. The requirement in OCGA § 44-14-361.1 (a) (4) for an owner to prove that such payments were "applied as provided by law" means, as explained in *Mayer*, that "an owner must not only show that full payment was actually made to the contractor, he is also 'required to show that the sums paid to the contractor were properly appropriated to materialmen and laborers or that the contractor's statutory affidavit concerning such indebtedness had been obtained. (Cits.)' [Cit.]" Id. at 192. Where, as here,

the liens were filed prior to payment of the full contract price to the general contractor, "payment that is thereafter made to any other materialman as a potential lien claimant is not payment which is 'properly appropriated' and may not be set up by the owner in defense of the subsequent foreclosure of those previously filed liens. ' "If a claim of lien has been filed and recorded, then the owner must see that the materialman or laborer is satisfied out of the money paid by him to the contractor, or he will be held liable for the amount in the event, upon suit brought, it should be determined the claim was valid." ' (Emphasis omitted.) [Cit.]" Id. at 193-194.

Application of these principles to the facts in the case sub judice, as was done in *Mayer Elec. Supply Co. v. Federal Ins. Co.*, 195 Ga. App. 191, supra, demonstrates the same results: "Contrary to the Surety's assertions, the consequences resulting from the abandonment of the project by the Subcontractor were the responsibility of the Contractor and that abandonment has no bearing on the Materialman's right to foreclose its lien for such materials as were furnished to the Subcontractor and actually used in the project. ' "(W)here the original contractor completes the work in accordance with the contract, the property owner will be responsible to mechanics, materialmen, and subcontractors who have fulfilled their contracts, and who have observed the requirements . . . of the statutes for the amount of their claims that do not aggregate more than the contract price, although the owner may have paid the original contractor the full contract price. . . ." ' [Cit.] The Materialman filed its claim of lien before the Owner paid the full contract price to the Contractor. Accordingly, the Surety did not meet its burden of showing that the sums paid by the Owner to the Contractor as full payment of the contract price were 'properly appropriated' so as to defeat the Materialman's lien. As previously noted: '(W)here claims of liens have been duly recorded, payments made to other materialmen and laborers with the money of the owner will be no reply to the claim of such materialmen or laborers so recording their liens.' [Cit.] It follows that the trial court [did not err in denying] summary judgment in favor of the Surety." Id. at 194-195.

" 'When . . . the movant is the defendant, he has the additional burden of piercing the plaintiff's pleadings and affirmatively negating one or more essential elements of the complaint.' [Cit.]" *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595, 596 (370 SE2d 843) (1988). Having failed to pierce EDI's allegations and affirmatively negate at least one essential element of its case, appellees were not entitled to summary judgment. *Burns v. Gleason*, 183 Ga. App. 245, 246 (1) (358 SE2d 646) (1987).

In our consideration of appellees' contention that the trial court improperly denied their motion for summary judgment on their con-

tract price defense, we hold that although the trial court erred in granting appellees' motion for summary judgment on the ground that EDI had waived its lien rights, the court correctly determined that the contract price defense did not afford appellees a valid ground for the grant of their motion.

3. Appellees insist that EDI's motion for summary judgment was properly denied because it did not show that specific materials were actually delivered to the construction site or used in construction of the Buckhead Plaza project. Again, appellees have "presented no evidence to indicate that the materials were not used on their property but merely disputed the sufficiency and accuracy of [EDI's] evidence." *Taverrite v. Lowe's of Franklin*, 166 Ga. App. 346, 347 (1) (304 SE2d 78) (1983). Moreover, "[a] materialman is not required to show that the materials for which he claims a lien were actually used on the job of the owner against whose interest he is asserting his lien. 'It is the general rule that there is a presumption of the use of materials in a building or improvement arising from the fact of their delivery thereto for that purpose, and the burden is then on the property owner to prove that the material was not so used. (Cits.) . . .' Where a materialman furnishes and delivers to the owner's contractor or agent materials in reliance upon the owner's representation that the materials are intended for the improvement of his property, the owner is estopped, as between himself and the materialman, to contend that it was not in fact so used. [Cits.]" *Maloy v. Planter's Warehouse &c. Co.*, supra at 71.

Thus, the fact that EDI's accountant was unable to identify some persons who signed the invoices upon delivery to the Buckhead Plaza project, that some items were picked up by EMI's employees, or that some items were delivered to EMI's shop rather than the job site, does not prove that the materials were not used in the Buckhead Plaza project and afforded no ground for denial of EDI's motion for summary judgment.

"Summary judgment law does not require the movant to show that no issue of fact remains but only that no genuine issue of material fact remains; and 'while there may be some "shadowy semblance of an issue" (cit.), the case may nevertheless be decided as a matter of law where the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion.' [Cits.]" *Peterson v. Liberty Mut. Ins. Co.*, 188 Ga. App. 420, 424 (373 SE2d 515) (1988). " ' "When a motion for summary judgment is submitted and supported by evidence, the adverse party may not rest his case as made, but must set forth specific facts and present his case in full in order to show there is a genuine issue for trial. (Cits.)" (Cit.) The burden of proof is shifted when the moving party makes a *prima facie* showing that it is entitled to judgment as a matter of law. At that time the

opposing party must come forward with rebuttal evidence or suffer judgment against him. (Cit.) "(I)f the defenses set up in an answer are pierced by the plaintiff's affidavits and the defendant fails to respond with specific facts showing a genuine issue for trial, summary judgment is properly granted." (Cit.)' [Cit.]" *Coleman v. McDonald's Corp.*, 185 Ga. App. 628, 629 (365 SE2d 282) (1988). Accord *Phillips v. Plymale*, 191 Ga. App. 338, 339 (1) (381 SE2d 580) (1989). Consequently, since EDI segregated its accounting process so as to avoid intermingling and since EDI presented undisputed evidence to support its $117,538.58 claim, the trial court erred in failing to grant EDI's motion for summary judgment.

*Judgment reversed. Carley, C. J., and Sognier, J., concur.*

DECIDED JUNE 27, 1990 —
REHEARING DENIED JULY 13, 1990 — CERT. APPLIED FOR.

*Bovis, Kyle & Burch, John V. Burch, Matthew D. Williams*, for appellant.

*Alston & Bird, John I. Spangler III*, for appellees.